IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| ENCOMPASS INDEMNITY CO., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:18cv44-SMD |
| ZUBIN SARKARI, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

The underlying facts of this case pertain to a motorcycle accident that occurred on July 15, 2017, involving Defendant Zubin Sarkari ("Sarkari"), who was riding the motorcycle of Manraj "Patrick" Sidhu ("Sidhu"), and Defendant Abhiprai Gulati ("Gulati"), who was a passenger. Sidhu insured his motorcycle under a policy issued by Encompass Indemnity Company ("Encompass"). Sarkari and Gulati claim entitlement to uninsured motorist benefits under Sidhu's insurance policy for the injuries they sustained as a result of the accident.

On January 15, 2018, Encompass filed a Complaint for declaratory judgment against Sarkari and Gulati. (Doc. 1). Encompass asks this Court to declare that Sidhu's insurance policy provides no coverage for the uninsured/underinsured motorist benefit claim made by Sarkari and Gulati. *See generally id.* Presently before the Court is Encompass's Motion for Summary Judgment (Doc. 28); Defendants' response in opposition (Doc. 32) thereto;

and Encompass's reply (Doc. 34). For the reasons that follow, the undersigned finds that Encompass's Motion for Summary Judgment (Doc. 28) is due to be DENIED.

I.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Vehicleriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present

evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322-23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## III. STATEMENT OF FACTS[1]

On July 15, 2017, Sidhu and his wife invited a group of friends to their lake home for a party. At approximately 11:00 a.m., Sakari and Gulati arrived at Sidhu's lake home for the party. Sidhu had known Sarkari and Gulati for approximately five or six years. As Sarkari and Gulati arrived at the party, Sidhu was returning from a ride on his new Harley Davidson motorcycle. When Sidhu parked the motorcycle in the driveway, Sarkari and others approached to look at it more closely. Sarkari asked Sidhu if he could go for a "spin" on the motorcycle. Sidhu asked Sarkari if he had ever ridden a Harley Davidson motorcycle before, and then gave Sarkari permission to ride. After Sarkari rode the motorcycle, it was placed in the garage and the garage door was closed.

Several hours later, Sarkari asked Sidhu if he could take his ten-year-old son for a ride on the motorcycle.[2] Sidhu agreed to let Sarkari take his son for a ride, and assisted

---

[1] The undersigned notes that the facts set forth in this Statement of Facts are undisputed by Encompass only for the purposes of summary judgment. *See* (Doc. 28) at 5. From an independent review of the record, it is clear that Sidhu's version of events leading up to the underlying accident is significantly different than Sarkari's version of events. However, the undersigned sets forth, with the acquiescence of Encompass, the facts in the light most favorable to Sarkari (which accepts his version of events as true) for the purpose of this motion only.

[2] Defendants suggest that Sarkari's request for Sidhu's permission to ride the motorcycle was more general than a request to ride the motorcycle with his son—i.e., that Sarkari requested to take the motorcycle for a spin instead of requesting to take the motorcycle for a spin with his son. However, the testimony of Sarkari, which supports this fact, is as follows:
> . . . as the day went on we went for a boat ride and did some jet skiing and stuff. And my son came up to me and asked me about, you know, how I could go for a ride without taking him for one. So I asked [Sidhu] if I can, you know, take *him for a spin*, and he told me where the keys were. . . .

(Doc. 28-1) at 22-23 (emphasis added). Further, Sarkari testified:
> Q. When he gave you permission, did he say – what exactly did he say when he said you could drive the bike?
> A. What exactly? He said sure. I said, can I take it for a spin?
> Q. And he said sure?
> A. My son wants to go on it, so he said sure.

4

Sarkari in finding the keys. Sarkari then left the house and took a "short spin in the community" with his son. After returning from that ride, Sarkari did not put the motorcycle away but, instead, took Gulati (a nineteen-year-old man) for a ride. Prior to taking Gulati for a ride, Sarkari did not explicitly seek permission from Sidhu to take Gulati for a ride, nor did Sidhu explicitly give Sarkari permission to do so. Gulati did not ask Sidhu's permission to ride the motorcycle.

While Sakari was riding the motorcycle with Gulati as a passenger, he encountered a section of the road that Sarkari described as "curvy." The speed limit on that section of the road—which is part of the private residential roads of Sidhu's gated community—is 15 miles per hour. Sarkari was driving between 30 and 35 miles per hour when he approached a curve. As he came around the curve, Sarkari saw an oncoming car in his lane no more than fifty feet away. Sarkari swerved to avoid the collision and ran off the road. He and Gulati were ejected from the motorcycle. Neither were wearing helmets. Sarkari suffered a head injury, and his wrist was shattered. Gulati suffered a broken left femur, a fracture of his L2 vertebrae, and a broken wrist. Apparently, the oncoming car did not stop to assist Sarkari and Gulati.

Prior to the day of the accident, Sarkari had ridden Sidhu's previous motorcycle on one or two occasions with Sidhu's permission. Sidhu testified that he never gave Sarkari or any other guest "blanket permission" to use any of his vehicles at will. He further testified that, whenever he gives someone permission to operate any of his vehicles, he is

---

*Id*. at 62.

"clear about where I want them to go, how to drive. I ask the question have you drive[n] before this thing, are you familiar with this, something like that."

Sarkari and Gulati have made a claim for uninsured motorist benefits under the insurance policy issued to Sidhu by Encompass. The pertinent provisions in the policy pertaining to coverage for Sarkari and Gulati include the following:

INSURING AGREEMENT

    A. We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
        1. Sustained by a covered person; and
        2. Caused by an accident.

        . . .

    B. Covered person as used in this part means:
        1. You or any family member.
        2. Any other person occupying your covered motor vehicle.

        . . .

    C. Uninsured motor vehicle means a land motor vehicle or trailer of any type:

        . . .

        4. Which is a hit-and-run vehicle whose operator cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:
            a. You or any family member;
            b. A vehicle which you or any family member are occupying; or
            c. Your covered motor vehicle.

    . . .

EXCLUSIONS

    A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any covered person:

        . . .

6

3. Using a vehicle without a reasonable belief that that covered person is entitled to do so.

## IV. DISCUSSION[3]

Encompass argues that summary judgment should be granted in its favor for two reasons: (A) Sarkari and Gulati are excluded from coverage under Sidhu's policy because they were using the motorcycle "without a reasonable belief" they were entitled to do so; and (B) Sarkari cannot recover because he was contributorily negligent in causing his injury. *See generally* (Doc. 28).

### A. Whether Sarkari and Gulati are covered under the policy because they held reasonable beliefs they were entitled to use Sidhu's motorcycle.

In Alabama, insurers have the right, absent statutory provisions to the contrary, to limit their liability and write policies with narrow coverage. *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co.*, 272 So. 2d 232, 235 (1972). Ambiguities in an insurance contract require a reviewing court to construe the policy in a manner most favorable to the insured. *Employers Ins. Co. of Ala. v. Jeff Gin Co.*, 378 So. 2d 693, 695 (Ala. 1979). However, where there is no ambiguity in the terms of a policy, a reviewing court must enforce the contract as written, and cannot defeat express provisions in the policy—including exclusions—by making a new contract for the parties. *Turner v. U.S Fidelity & Guaranty Co.*, 440 So. 2d 1026, 1028 (Ala. 1983). When applying exclusions to coverage, a reviewing court must interpret them "as narrowly as possible in order to provide maximum

---

[3] Because this case is before the Court based upon diversity jurisdiction, the Court must follow Alabama law to interpret the scope of the insurance policy at issue. *Provau v. State Farm Mut. Auto Ins. Co.*, 772 F.2d 817, 819-20 (11th Cir. 1985).

coverage [to] the insured." *Hall v. State Farm Mut. Auto Ins. Co.*, 514 So. 2d 853, 854-55 (Ala. 1987). The insurer bears the burden of proving the applicability of an exclusion. *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001).

Here, Sidhu's policy excludes coverage for "bodily injury sustained by any covered person" who is using "a vehicle without a reasonable belief that that covered person is entitled to do so." The undersigned finds that this language is unambiguous. The policy states that a "covered person" is any "person occupying [the insured's] covered motor vehicle." Clearly, Sarkari and Gulati were occupying Sidhu's motorcycle at the time of the accident and are, therefore, covered persons under the policy.

The policy also unambiguously excludes covered persons if those covered persons use the insured's vehicle "without a reasonable belief that that covered person is entitled to do so." Therefore, this language requires Sarkari and Gulati to hold reasonable beliefs that they were entitled to use Sidhu's motorcycle in order for uninsured motorist coverage to apply. Importantly, this language does not require Sidhu to give Sarkari and Gulati permission to use the motorcycle; instead, the exclusion focuses on the perspectives of Sarkari and Gulati and whether, based upon the surrounding circumstances, they had reasonable beliefs that they could use Sidhu's motorcycle. *See Nationwide Affinity Ins. Co. of Am. v. Won*, 2015 WL 11232362, at *5 (N.D. Ga. Feb. 25, 2015) (interpreting the similar language of an insurance policy to require the driver to hold a reasonable belief that he is entitled to operate the vehicle); *Billups v. Ala. Farm Bur. Mut. Cas. Ins. Co.*, 352 So. 2d 1097, 1102-03 (Ala. 1977) (when determining whether a user held a reasonable belief that

8

he was entitled to use the vehicle, the inquiry must remain on "how the situation appeared to the user" of the vehicle.).

Of course, if Sidhu gave Sarkari or Gulati permission to ride the motorcycle—either expressly or impliedly—it is axiomatic that they would hold reasonable beliefs that they were entitled to use the motorcycle. *See Cooper v. State Farm Mut. Auto. Ins. Co.*, 849 F.2d 496, 499-500 (In order to show a reasonable belief of entitlement to use a vehicle under North Carolina law, an individual must show that he had a reasonable belief that he had the permission of the owner to use the vehicle.).[4] Whether Sarkari and Gulati held reasonable beliefs that they were entitled to use Sidhu's motorcycle is both objective and subjective. *Id*. at 497 n.2.

### 1. Whether Sarkari held a reasonable belief that he could use Sidhu's motorcycle to take Gulati for a ride.

The undersigned first turns to whether Sarkari had the express permission of Sidhu to use the motorcycle to take Gulati for a ride. Express permission is permission that is directly and distinctly stated, and is not dubious or ambiguous. *See Alfa Mut. Ins. Co. v. Small*, 829 So. 2d 743, 747 (Ala. 2002) (relying upon Webster's Third New International Dictionary, which defines "express" as "directly and distinctly stated or expressed rather than implied or left to inference: not dubious, or ambiguous"). The evidence shows that Sarkari asked Sidhu if he could use the motorcycle, but for the purpose of taking his son

---

[4] The undersigned reiterates that *Cooper* interprets North Carolina law as to whether an individual has a reasonable belief of entitlement to use a vehicle and, therefore, the undersigned does not cite *Cooper* because it is binding upon the undersigned's analysis, here. However, the undersigned does find that if Sarkari and Gulati had Sidhu's permission to use the motorcycle, they would clearly hold the requisite reasonable belief required under the policy for coverage. Thus, the undersigned references *Cooper* for that conclusion only.

9

for a ride. Thus, while Sarkari had the express permission of Sidhu to use the motorcycle, he did not have Sidhu's express permission to use the motorcycle in the manner in which he did—i.e., to take Gulati for a ride. Accordingly, if Sarkari possessed a reasonable belief that he had permission to use Sidhu's motorcycle to take Gulati for a ride, it was not based upon Sidhu's express permission.

Next, the undersigned turns to whether Sarkari had the implied permission of Sidhu to use the motorcycle to take Gulati for a ride. "In order to support an inference that one had implied permission to use the [vehicle] of another for his own purposes, there must be a course of conduct engaged in by the parties over a period of time prior to the use in question or else there must be particular circumstances to justify an inference of implied permission." *Sleight v. State Farm Mut. Auto. Ins. Co.*, 516 So. 2d 616, 618 (Ala. 1987). When considering whether there is a "course of conduct" established, "the evidence must tend to show a course of conduct or practice on the part of the person whose permission must be had, with knowledge of the existing facts and circumstances that supports a reasonable inference of permissive use of the automobile." *Id*. (citing *Pettis v. State Farm Mut. Auto. Ins. Co*., 286 Ala. 344, 346 (Ala. 1970). Implied permission may be based upon "[m]any pertinent factors," "but whatever their nature, extent and pertinency, their result must be consistent with, and generate and support a reasonable inference that the driver had permission to use the automobile." *Pettis*, 286 Ala. at 347. "If there [is] any evidence, or reasonable inferences to be drawn from the evidence, that [an individual had] implied

permission to use the automobile when the accident occurred, the issue should [be] submitted to the jury." *Id*. at 346.

As to any course of conduct between Sarkari and Sidhu, the evidence shows, at most, that Sidhu always granted Sarkari permission to use his motorcycles when it was requested. However, because Sarkari only rode Sidhu's motorcycles on a handful of occasions and only twice on the day of the accident, the undersigned does not find that there was a course of conduct between Sarkari and Sidhu that could lead Sarkari to reasonably believe that he had Sidhu's permission to use the motorcycle carte blanche.

However, this does not necessarily end the inquiry. As noted above, the exclusion policy does not require the covered person to have the insured's permission; instead, the policy requires that the covered person have a reasonable belief that he could use the vehicle. Thus, the undersigned examines whether there are circumstances that "justify an inference of implied permission" that would lead Sarkari to hold a reasonable belief that he had Sidhu's permission to use the motorcycle to take Gulati for a ride. The undersigned finds that a reasonable juror could conclude that there are.

From Sarkari's perspective, Sidhu allowed him to use the motorcycle earlier in the day to take the bike for "a spin." A few hours later, Sidhu once again allowed him to take the motorcycle so that he could give his son a ride. Thus, on the day of the accident, Sidhu allowed Sarkari to use the motorcycle each time that he requested its use. In addition, there is no evidence that Sidhu declined Sarkari's requests to use his motorcycle in the past. In other words, it appears that, each time permission was requested, Sidhu allowed Sarkari to use his motorcycle. While the undersigned does not find that these instances establish a

11

course of conduct between Sarkari and Sidhu, they undoubtedly factor into Sarkari's mindset prior to taking Gulati for a ride.

Further, the evidence does not show that Sidhu explicitly restricted Sarkari's use of the motorcycle for any particular rider when Sidhu requested permission to use it. For example, when Sarkari first requested permission to ride the motorcycle, Sidhu did not tell him that he could only go alone. Similarly, when Sarkari requested permission to take his son for a ride, Sidhu did not reply: "Sure, but you cannot take anyone else," or "Yes, but you can only take your son." This fact suggests that, from Sarkari's point of view, Sidhu was not restricting the use of the motorcycle to specific passengers.

Finally, according to Gulati, people at the party were taking the motorcycle for trips all throughout the day. There is no evidence that Sidhu declined a request for any individual to ride the motorcycle that day, nor is there definitive evidence that permission from Sidhu was sought and granted each time the motorcycle was ridden. From Sarkari's perspective, then, he could have believed that, once he received Sidhu's permission to take his son for a ride, that he need not ask Sidhu's specific permission to take Gulati for a ride. This is particularly true considering that Sarkari did not put the motorcycle in the garage and return the keys after the trip with his son. Had he done so, it might be less reasonable to assume that he could simply grab the keys and take Gulati for a ride. However, as the keys were still in Sarkari's possession, and it appears that Sidhu had not restricted anyone from using the motorcycle that day, the undersigned finds that a reasonable juror could conclude that Sarkari reasonably believed that he had Sidhu's permission to take Gulati for a ride on the

motorcycle. Accordingly, summary judgment as to whether Sarkari is excluded from the policy should be denied.

### 2. Whether Gulati held a reasonable belief that he could use Sidhu's motorcycle.

Neither party provides much argument as to whether Gulati held a reasonable belief that he could be a passenger on Sidhu's motorcycle. However, construing the facts and circumstances in the light most favorable to Gulati, the undersigned finds that a reasonable juror could conclude that Gulati held such a belief.

Although Gulati cannot remember many of the details regarding the accident or the events leading up to it, he is certain that he did not request express permission from Sidhu to ride the motorcycle. Gulati's testimony is as follows:

> Q. Do you recall any conversations you had with Mr. Patrick Sidhu that day?
>
> A. Not particularly. Not besides small talk, just greeting.
>
> Q. You didn't ask him if you could ride the motorcycle?
>
> A. No, absolutely not.
>
> Q. And he didn't tell you you could?
>
> A. No, not particularly. He might have offered me to ride it. I don't recall. But I know I wouldn't have asked to ride it.

(Doc. 28-3) at 37.

From this testimony, the undersigned finds that Gulati did not have Sidhu's express permission to ride the motorcycle. To be sure, Gulati testified that Sidhu "might have offered me to ride" the motorcycle, but his testimony is too attenuated and unsupported for the undersigned to conclude that he had Sidhu's express permission to ride the motorcycle,

13

particularly considering his general lack of memory regarding the events leading up to the accident.

Next, the undersigned turns to whether Gulati had Sidhu's implied permission to ride as a passenger on the motorcycle. As previously discussed, implied permission may be based upon a "course of conduct or practice on the part of the person whose permission must be had, with knowledge of the existing facts and circumstances, that supports a reasonable inference of permissive use of the [motorcycle]." *Sleight*, 516 So. 2d at 618. There is no evidence that Gulati had been a passenger on Sidhu's motorcycle—on the day of the accident or previously—without Sidhu's permission. As such, Sidhu did not engage in a course of conduct, at least as it pertains to Gulati individually, that would give Gulati a reasonable belief that he could be a passenger on the motorcycle.

Nonetheless, the undersigned examines whether there are circumstances that "justify an inference of implied permission" that would lead Gulati to hold a reasonable belief that he had Sidhu's permission to ride the motorcycle. The undersigned concludes that a reasonable juror could find that there are. Gulati testified that, on the day of the accident, he recalled "throughout the day hearing about [Sidhu] getting a new motorcycle and him showing it off and people were, like, taking rounds on it which is a normal thing." (Doc. 28-3) at 23; *see also id*. at 37 ("Before the boat though is when I remember – when I remember hearing people like going on the motorcycle. Like hearing people taking their

rounds is an earlier thing in the day."). When asked if he would be surprised that Sidhu said that he and Sarkari took the motorcycle without his permission, Gulati testified:

> A. Yes.
>
> Q. Why is that?
>
> A. A, because he was offering. I do remember he was offering the motorcycle to multiple people. Like, people were just constantly taking rounds on it presumably without him on the back. Like, he was letting people take it themselves.

*Id*. at 38.

Construing Gulati's testimony in the light most favorable to him, it appears that Gulati recalls Sidhu offering the motorcycle to multiple people. He recalls people "constantly taking their rounds" on it as a "normal thing" that occurred at the party. This testimony suggests that, from Gulati's perspective, Sidhu was allowing people to ride the motorcycle with or without permission. If this testimony is believed, then, the undersigned finds that a reasonable juror could conclude that Gulati held a reasonable belief that he could ride Sidhu's motorcycle. Accordingly, summary judgment as to whether Gulati is excluded from the policy should be denied.

### B. Whether Sarkari is prohibited from recovering under the policy because he was contributorily negligent in causing his injury.

Encompass argues that, even if Sarkari held a reasonable belief that he could use the motorcycle, he should still be precluded from recovering under the policy because he was contributorily negligent based upon excessive speed and his failure to wear a helmet. (Doc. 28) at 18-21. "Contributory negligence is an affirmative and complete defense to a claim based on negligence." *Serio v. Merrell, Inc.*, 941 So. 2d 960, 964 (Ala. 2006) (internal

quotation marks and citations omitted). The party seeking the application of contributory negligence must prove that the claimant "1) had knowledge of the dangerous condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger." *Ridgeway v. CSX Transp., Inc*., 723 So. 2d 600, 606 (Ala. 1998). Contributory negligence is normally a question for the jury, but "may be found to exist as a matter of law when the evidence is such that reasonable people must all agree that the plaintiff was negligent and that the plaintiff's negligence was a proximate cause of the plaintiff's injury." *Buchanan v. Mitchell*, 741 So. 2d 1055, 1057 (Ala. 1999); *Gulledge v. Brown & Root*, 598 So. 2d 1325, 1326-27 (Ala. 1992). In other words, "[i]f [a] [p]laintiff had knowledge of facts sufficient to warn a man of ordinary sense and prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct in the premises, then he was guilty of negligence if he failed to exercise ordinary care to discover and avoid the danger and the injury." *Gulledge,* 598 So. 2d at 1327 (quoting *Alabama Power Co. v. Mosley,* 318 So. 2d 260, 263 (1975)).

Here, Encompass argues that Sarkari was contributorily negligent based, in part, upon his speed. Specifically, Encompass asserts that Sarkari was contributorily negligent because: (1) Sarkari admits he was driving 30-35 miles per hour in an area with a 15 miles per hour speed limit; and (2) Sarkari admits it is reckless to speed on that road since it is curvy and there was low visibility. (Doc. 28) at 18. This, Encompass argues, should preclude Sarkari's recovery.

For support, Encompass points the Court to *Serio v. Merrell, Inc*., 941 So. 2d 960 (Ala. 2006). In *Serio*, a motorist approached an intersection with no traffic light or stop sign. *Serio*, 941 So. 2d at 962. A tractor-trailer approached from the other direction. *Id*. The motorist turned left in front of the tractor-trailer, which was allegedly driving over the speed limit. *Id*. The tractor-trailer applied its brakes, jackknifed, and collided with the motorist's car, causing her injuries. *Id*.

The Alabama Supreme Court found that Merrell Trucking ("Merrell"), the employer of the tractor-trailer driver, "made a prima facie showing that Serio was contributorily negligent . . . by establishing that she pulled into the path of the large oncoming truck when she could not have failed to see it had she looked to her left before, or as, she moved forward into the intersection." *Id*. at 964. The Court concluded that Serio's "own testimony showed that she consciously appreciated the danger posed by pulling onto a highway on which the vehicles traveling *have the right-of-way*, without first making sure that no vehicle was approaching too closely . . . [and] that there was no reason she could not have seen the tractor-trailer truck before she pulled out, given the prevailing conditions." *Id*. at 964-65 (emphasis added). Having concluded that Merrell made a prima facie showing, the Court continued: "the burden shifted to Serio to produce substantial evidence creating a genuine issue of material fact as to whether she consciously appreciated the danger posed by any failure to adequately and accurately check for approaching traffic before pulling out from the stop sign an into an intersection." *Id*. at 965. The Court concluded that Serio did not meet her burden and, therefore, granted summary judgment in favor of Merrell. *Id*. at 966.

17

Unlike in *Serio*, the undersigned cannot find here that Sarkari was contributorily negligent as a matter of law based upon his speed at the time of the accident. In *Serio*, there was no dispute that Serio pulled in front of the tractor-trailer, who had the right-of-way, and that doing so caused the accident which led to her injuries. In contrast, the evidence here (construed in the light most favorable to Sarkari) shows that the accident was caused by an unidentified vehicle in Sarkari's lane, and that Sarkari swerved to avoid a collision with the oncoming vehicle. There is no evidence that Sarkari's speed caused the accident or even that it contributed to the accident. Therefore, the undersigned finds that the issue of contributory negligence should be submitted to a jury.

To be sure, one might presume that, had Sarkari been traveling the speed limit, he could have avoided the crash entirely. However, even with Sarkari's admission that he was speeding and that, arguably, such behavior was reckless on that portion of the roadway,[5] the undersigned cannot find that Encompass has shown that Sarkari appreciated the danger of an oncoming car in the wrong lane at the time he was speeding. Without knowledge and appreciation of such a dangerous condition, contributory negligence cannot be imputed upon Sarkari as a matter of law. Accordingly, summary judgment as to whether Sarkari was contributorily negligent based upon his speed should be denied.

---

[5] Encompass asserts that "Sarkari [ ] admits it is reckless to speed on that road since it is curvy and there was low visibility." (Doc. 28) at 18. This conclusion is derived from Sarkari's deposition testimony, in which he was asked whether he thought the oncoming vehicle was driving recklessly. (Doc. 28-1) at 27. It does not appear that Sarkari was ever asked whether he thought he was driving recklessly, or, more generally, that speeding on that portion of the highway was reckless. *See id*. at 27-29. Instead, it appears that the testimony provided from Sarkari admits, at most, that he thought it was reckless for the oncoming vehicle to exceed the speed limit. *See id*. at 28 (noting that Sarkari was questioned whether "it would have been reckless to exceed the speed limit for them" and whether "it's reckless for the driver of the other vehicle to exceed the speed limit").

Similarly, Encompass's argument that Sarkari was contributorily negligent because he was not wearing a helmet also fails. Encompass points the Court to *Lemley v. Wilson*, 178 So. 3d 834 (Ala. 2015) for support. However, that case is easily distinguishable. In *Lemley*, a roadside worker was killed when he stepped into oncoming traffic without wearing a safety vest or warning signs. *Lemley*, 178 So. 3d 834, 844. The Court found that, even if the driver that hit the roadside worker was negligent, there was evidence that the roadside worker was contributorily negligent, thus barring his recovery. *Id*. Specifically, the Court found that the roadside worker was contributorily negligent because he "did not have any warning flags, signs, or devices near him in the roadway" and that he "was wearing neutral-colored clothing when he was struck." *Id*. However, despite the lack of safety equipment, the roadside worker "stepped out in front of a speeding vehicle." *Id*. Therefore, the Court found that the jury could have reasonably concluded that the roadside worker "had knowledge of the dangerous condition; that [he] appreciated the danger under the circumstances; and that [he] failed to exercise reasonable care by stepping out in front of a speeding vehicle under the circumstances." *Id*.

Unlike here, the roadside worker's failure to wear safety gear potentially *caused* the accident in *Lemley*. While it is reasonable to assume that Sarkari's failure to wear a helmet exacerbated his head injuries, there is no evidence that his failure to wear a helmet caused the accident or even that wearing a helmet would have prevented his injuries from occurring. Further, Sarkari sustained injuries to his wrist, which presumably have no connection to his failure to wear a helmet. For these reasons, the undersigned cannot find that Encompass has made a prima facie showing that Sarkari, by not wearing a helmet, was

contributorily negligent. Accordingly, summary judgment as to whether Sarkari was contributorily negligent based upon his failure to wear a helmet should be denied.

## V. CONCLUSION

For the foregoing reasons, it is

ORDERED that Encompass's Motion for Summary Judgment (Doc. 28) is DENIED.

Done this 13th day of August, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE